UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:24-cr-80056-RLR

**UNITED STATES OF AMERICA,**

vs.

**CHRISTOPHER SCHWEIKART,**

    **Defendant.**

_____/

## TRIAL STIPULATIONS

COMES NOW, THE UNITED STATES OF AMERICA, by and through the undersigned Assistant United States Attorney, and the Defendant, CHRISTOPHER SCHWEIKART, personally and through his attorneys, and stipulate as set forth below the following facts that can be accepted as though proven beyond any reasonable doubt:

1. On or about March 16, 2024, at approximately 5:21 a.m., Special Agents from the Department of Veterans Affairs Office of Inspector General arrived at the Veterans Affairs Medical Center in West Palm Beach ("VAMC"), located at 7305 North Military Trail, Riviera Beach, Florida 33410, after receiving a call from the VAMC regarding a veteran ("Victim"), who was found unresponsive in the shared bathroom between rooms 208 and 210, in the psychiatric care unit (3C) of the hospital. VAMC medical staff had attempted to resuscitate the victim to no avail and the victim was pronounced dead at the scene. The victim's room was room 210, which he shared with SCHWEIKART. The room had two beds. The doors to the bedrooms are typically closed at night, but not locked. The patients have access to other rooms and spaces, but the entire psychiatric care unit at the hospital is locked, meaning patients cannot simply walk out. Surveillance videos from throughout the night and morning show nurses doing their rounds and do not appear to show

any other patient entering room 210.

2. While still at the scene, F.C., a Registered Nurse at VAMC, told law enforcement that SCHWEIKART told her something to the effect of: "I just want to die. I want to die so bad. I killed the guy. I put my hands around his neck. He wanted to die." Two VA OIG special agents conducted a recorded interview with SCHWEIKART. The interview took place in a large open room with numerous tables and chairs, which is used for, among other things, eating meals. In addition to the special agents, inside the room were the psychiatrist on duty, the nurse manager, and approximately two VA police officers. The two special agents and SCHWEIKART were sitting at a table. SCHWEIKART was not handcuffed. The other individuals who were in the room were seated or standing elsewhere. The entire interview lasted approximately five minutes. When the interview began, SCHWEIKART was asked something to the effect of "what happened last night?" SCHWEIKART said that the victim was talking about Vietnam. SCHWEIKART said that he walked into the bathroom. Agents stopped SCHWEIKART at this point and told him that this conversation was totally voluntary and that they appreciated him talking to them, and that he could stop the interview at any time. SCHWEIKART replied with something to the effect of "I can't lie." The interview continued. SCHWEIKART said that the victim startled SCHWEIKART after SCHWEIKART walked into the bathroom, and then SCHWEIKART strangled the victim.

3. Later in the evening on March 16, 2024, SCHWEIKART stated to M.A., Registered Nurse, VAMC, something to the effect that he was sorry for what he did and that he killed the victim. SCHWEIKART told M.A. that when the victim went to the bathroom and sat on the toilet, SCHWEIKART startled the victim from behind and strangled him with both hands. SCHWEIKART said that when the victim had no more life in him, SCHWEIKART tried to adjust

the victim on the toilet so that it would not look so obvious. After strangling the victim, SCHWEIKART said that he went back into his room and laid in his bed.

4. On or about March 16, 2024, the Palm Beach County Medical Examiner's (PBCME) Office assumed control of the victim's body to conduct an autopsy. On March 17, 2024 an autopsy was conducted by the Office of the District Medical Examiner for Palm Beach County, Florida. The opinion of the Associate Medical Examiner who conducted the autopsy was that the victim's cause of death was compression of the neck, that the manner of death was a homicide, and that the injury occurred because the victim was assaulted.

5. Investigators later obtained DNA samples from the neck of the victim. Pursuant to a federal search warrant, investigators also obtained buccal DNA samples from SCHWEIKART. DNA analysis performed by the Federal Bureau of Investigation determined the following: male DNA was obtained from the neck swabs from the victim, and that DNA was interpreted as originating from two individuals, one of whom is the victim; and the DNA results from the victim's neck are 23 million times more likely if the victim and SCHWEIKART are contributors than if the victim and an unknown, unrelated person are contributors.

6. Later, Dr. Kristina Lloyd, a licensed clinical psychologist employed by the federal Bureau of Prisons, performed a forensic evaluation of SCHWEIKART. As part of the evaluation relating to the offense conduct in this case, Dr. Lloyd issued a written report of her findings, which concluded that due to a severe mental disease, namely, major depressive disorder with psychotic features, SCHWEIKART did not appreciate the wrongfulness of his actions (SCHWEIKART did, however, despite the presence of a severe mental disease, appreciate the nature and quality of his actions).

7.     SCHWEIKART was also evaluated by Dr. Gregory Landrum, a clinical and forensic psychologist hired by the defense. Dr. Landrum likewise concluded that SCHWEIKART suffered from a mental illness, namely, major depressive disorder, severe, with psychotic features, and as a result of a psychotic episode, did not appreciate the wrongfulness of his actions resulting in the killing of the victim.

8.     Prior to Dr. Lloyd and Dr. Landrum evaluating SCHWEIKART, back on the date of the offense conduct, on or about March 16, 2024, SCHWEIKART had also met with a clinical psychologist and a clinical psychiatrist at the VAMC a few hours after VA Special Agents arrived to investigate the offense conduct. The psychologist and psychiatrist both are of the opinion that when they met with SCHWEIKART that day, he suffered from severe depression with psychotic features.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY
By:_____
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY
A#5501696
Email: marton.gyires@usdoj.gov
United States Attorney's Office
500 South Australian Avenue, 4thFloor
West Palm Beach, FL 33401


_____          _____
Robert S. Gershman, FBN:917397                    Christopher Schweikart
Attorney for Defendant                                      Defendant
Gershman & Gershman, P.A.                          Date: _____
2160 W. Atlantic Avenue
Second Floor
Delray Beach, FL  33445
(561) 684-8898 (desk tel)
e-mail:robert@rglawfirm.us


_____
Edward Reagan, Florida Bar No. 0028215
Attorney for the Defendant
658 W. Indiantown Road Suite 209
Jupiter, Florida 33458 (561) 832-7443 telephone ( 561) 683-9970 facsimile